IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW BERRY, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-1492 |
| | § | |
| CHRYSLER GROUP, LLC, *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This case is before the Court on the issue of the Court's subject matter jurisdiction over this action. *See* Hearing Minutes and Order [Doc. # 17]; Letter of Agreement [Doc. # 21]. Plaintiffs Mathew Berry and Sue G. Perlo filed their Jurisdictional Brief ("Plaintiffs' Brief") [Doc. # 28], and Defendant Chrysler Group LLC filed its Briefing on Subject Matter Jurisdiction ("Defendant's Brief") [Doc. # 27]. Plaintiffs filed a Response to Defendant's Brief [Doc. # 29], and Defendant Chrysler Group LLC filed a Response to Plaintiffs' Brief [Doc. # 30]. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that it lacks subjection matter jurisdiction and this case must be dismissed.

# I. BACKGROUND

On July 2, 2011, Robin Berry was driving a 2003 Chrysler Town & Country minivan on U.S. Highway 285 in West Texas when the minivan was struck head-on by a 2003 Toyota 4Runner driven by Defendant Mike Scott Doyle. Berry's husband Joshua Bryant Berry, her sons A.B. and P.B., and her daughter W.B. were also in the Chrysler vehicle. Robin and Joshua were killed by the collision. A.B. and P.B. suffered permanent paraplegia. Plaintiffs argue that the Chrysler's Town & Country minivan's safety cage, front compartment, seat belts, and seat backs failed in the accident. Plaintiffs assert claims in this court for strict liability and negligence against Chrysler Group, LLC, Chrysler Canada, Inc., and Key Safety System, Inc. ("KSS") and a claim for negligence against Mike Scott Doyle. First Amended Complaint [Doc. # 8].

Plaintiffs allege that the Court has subject matter jurisdiction based on complete diversity of citizenship. 28 U.S.C. § 1332. The diversity issue is complex because of a split of authority on the citizenship of a trust. Defendant Chrysler Group, LLC contests the Court's subject matter jurisdiction, arguing that Plaintiffs have not met their burden to prove that complete diversity exists between Plaintiffs and Defendants.

The parties do not dispute the following. Both Plaintiffs are residents of Texas. Plaintiffs' Brief [Doc. # 8], at 1-2. Defendant Doyle is a citizen of

Arizona.  *Id.* at 8.  Defendant Chrysler Canada, Inc. is a foreign corporation with its principal place of business in Canada.  *Id.* at 6-7.  KSS is a Delaware corporation with its principal place of business in Michigan.  *Id.* at 7-8; KSS Answer [Doc. # 20], at 5.

Defendant Chrysler Group, LLC is a Delaware limited liability company with its principal place of business in Michigan.  *Id.*; Chrysler Answer [Doc. # 9], at 2.  Chrysler Group, LLC has two members: Fiat S.p.A ("Fiat") and the United Auto Workers' Retiree Medical Benefits Trust (the "VEBA Trust").  Stipulation [Doc. # 26], at 1.  Fiat is a foreign corporation created under the laws of Italy and maintains its principal place of business in Italy.  First Amended Complaint [Doc. # 8], at 3; Stipulation [Doc. # 26], at 1.  Fiat thus is not a citizen of the State of Texas.

The VEBA trust is managed by one corporate trustee and a committee of eleven individuals (the "Committee").  State Street Bank and Trust Company, the corporate trustee, is incorporated under the laws of Massachusetts and maintains its principal office in that state.  First Amended Complaint [Doc. # 8], at 3-4.  The parties agree that the formal trustee of the VEBA Trust is not a citizen of Texas.  Stipulation [Doc. # 26], at 2.   The eleven individuals comprising the Committee are citizens of Michigan, New York, New Jersey, North Carolina, and Illinois, s*ee*

Second Amended Complaint [Doc. # 36], at 4-5, and none is a citizen of Texas.[1] More than 13,000 beneficiaries of the VEBA Trust were citizens of the State of Texas at the time Plaintiffs filed this case.[2] VEBA Trust's Objections and Response to Subpoena [Doc. # 41], Exh. A, at 3.

## II. LEGAL STANDARDS

"Jurisdiction cannot be waived, and it is the duty of a federal court first to decide, *sua sponte* if necessary, whether it has jurisdiction before the merits of the case can be addressed." *Filer v. Donley*, 690 F.3d 643, 646 (5th Cir. 2012) (citation omitted); *see also A.I.M. Controls, L.L.C. v. C.I.R.*, 672 F.3d 390, 392 (5th Cir. 2012) ("Federal courts 'must raise and decide jurisdictional questions that the parties either overlook or elect not to press.'"). Accordingly, Defendant's oral request on September 4, 2012, at the initial pretrial conference and its briefing are deemed a request for dismissal of the case under Federal Rule of Civil Procedure

---

1 According to the parties, the Committee assists in operating the VEBA Trust. Chrysler Group has stipulated that the Committee's members should be deemed trustees for purposes of the Court's diversity jurisdiction analysis. Decl. of Van Der Wiele [Doc. # 35], at 2; *see also* Second Amended Complaint, at 4-5.

2 The Court declined to decide this case without a factual basis concerning whether any beneficiaries of the VEBA Trust were citizens of the State of Texas at the time this suit was filed, in order to avoid rendering an advisory opinion on an important issue of law. *See* Order, entered Dec. 21, 2012 [Doc. # 34], at 3-4.

12(b)(1).[3] *See* Hearing Minutes and Order [Doc. # 17]; Letter of Agreement [Doc. # 21]; Defendant's Brief [Doc. # 27]; Defendant's Response [Doc. # 30]; Order [Doc. # 34], at 1; Response to the December 28, 2012 Submission [Doc. # 37], at 1.

While the United States Constitution requires only minimal diversity, U.S. CONST. art. III, § 2, cl. 1; *see Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1064 n.3 (5th Cir. 1992) (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967)), Congress has imposed a higher threshold for the federal courts. Under 28 U.S.C. § 1332, there must be complete diversity between plaintiffs and defendants and at least $75,000 in controversy.[4] 28 U.S.C. § 1332; *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). For complete diversity, all persons and entities on one side of the controversy must be citizens of

---

3 The Court preferred to decide this issue based on a formal motion and requested that Chrysler Group file such a motion by December 31, 2012, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Order [Doc. # 34], at 4. However, Chrysler Group failed to comply. Plaintiffs have not objected to the Court's reliance on Defendant's oral request for dismissal at the initial pretrial conference and associated briefing in lieu of a written motion for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Order [Doc. # 34], at 1; Response to the December 28, 2012 Submission [Doc. # 37], at 1 ("Plaintiffs have reviewed Chrysler's submission and do not believe it is necessary to add anything to their prior briefing on these issues."). To avoid further delays, the Court decides the jurisdictional issue without a formal motion. *See A.I.M. Controls*, 672 F.3d at 392; *Filer*, 690 F.3d at 646.

4 The parties do not dispute that the amount in controversy exceeds $75,000. *See generally* Defendant's Brief.

states different from all persons and entities on the other side of the controversy. *McLaughlin*, 376 F.3d at 353; *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)).  The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted). Thus, Plaintiffs here have the burden to demonstrate there is complete diversity.

The citizenship of a limited liability company ("LLC") is based upon the citizenship of each of its members.  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).  For diversity jurisdiction purposes, Fiat's citizenship is diverse from Plaintiffs'.  28 U.S.C. § 1332(a)(3).  The dispositive jurisdictional issue is, therefore, the citizenship of the VEBA Trust.

## III.  ANALYSIS

Plaintiffs argue that in determining the citizenship of the VEBA Trust, the Court should look only to the citizenship of that Trust's trustees, relying on *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), and *Mullins v. TestAmerica Inc.* ("*Mullins II*"), 564 F.3d 386, 397 n.6 (5th Cir. 2009).  Defendants counter, relying on the Supreme Court's holding in *C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990), that both the trustees and the beneficiaries of a trust must be

considered for the purpose of determining a trust's citizenship. Defendant's Brief, [Doc. # 27], at 5.

In *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), eight individual trustees filed suit in their own names. *Id.* at 459. Fidelity Mortgage Investors, a trust, was not named a party in the suit. *Id.* The Supreme Court addressed "whether the *trustees* of a business trust may invoke the diversity jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders." *Id.* at 458 (emphasis added). Navarro Savings Association ("Navarro") argued that the beneficiaries, not the trustees, were the real parties in interest in the pending case and therefore held that the beneficiaries' citizenship should control when determining whether the parties were completely diverse. *Id.* at 461-62. The Supreme Court disagreed and noted that the trustees "possesse[d] certain customary powers to hold, manage, and dispose of assets for the benefit of others" and were "active trustees whose control over the assets held in their names is real and substantial." *Id.* at 464-65. The Court concluded that the trustees were the "real parties in interest . . . for purposes of diversity jurisdiction," *id.* at 464, and that "trustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship." *Id.* at 464 (citation omitted). The Court did not directly address whether, when a trust is a named party to a lawsuit, the trust's citizenship for the purpose of diversity

jurisdiction is based on the citizenship of the trustees, the trust's beneficiaries, or both the trustees and the beneficiaries. *See Carden*, 494 U.S. at 192-94; *see generally Navarro*, 446 U.S. at 462-66. As noted by the Third Circuit, "*Navarro* simply does not say that citizenship of a trustee determines the citizenship of a trust." *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 205 (3d Cir. 2007).

Ten years later in *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990), the Supreme Court, in an opinion by Justice Scalia writing for a five-four majority, held that "[w]e adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against [an artificial] entity depends on the citizenship of 'all the members,' 'the several persons composing such association,' 'each of its members.'" *Id.* at 195-96 (quoting *United Steelworkers of Am. v. R. H. Bouligny, Inc.*, 382 U.S. 145, 146 (1965); *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456 (1900); *Chapman v. Barney*, 129 U.S. 677, 682 (1889)). The *Carden* majority used sweeping language to explain that it has "never held that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members." *Carden*, 494 U.S. at 192. The Supreme Court "reject[ed] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members." *Id.* at 195.

Distinguishing between corporations and all other artificial entities, the *Carden* Court went on to explain that "[w]hile the rule regarding the treatment of corporations as 'citizens' has become firmly established, we have (with an exception [for a Puerto Rican entity, a *sociedad en comandita*]) just as firmly resisted extending that treatment to other entities."[5] *Carden*, 494 U.S. at 189. As the Eleventh Circuit explained, "[i]n reaching this conclusion, the Court very clearly reaffirmed the doctrinal distinction between corporations on the one hand, and all other types of business entities on the other . . . ." *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 89 (2006), *as recognized in Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1348 (11th Cir. 2008).

---

5 Given the *Carden* majority and dissent's disagreement about how to characterize the *sociedad en comandita*, it is understandable that the *Carden* majority did not want to adopt a rule that turned on the specific powers of members of an artificial entity. The innumerable variations of structures of trusts and their management arrangements would create potentially complex and fact-intensive satellite litigation in order to determine "real parties in interest" for purposes of *Navarro*. Every diversity case involving a trust would require an examination of the roles and duties of the trustees and other potential members of a trust, which would be an unwieldy process, at best. Indeed, in the case at bar, Chrysler Group, to avoid this issue, has agreed to assume that the Committee members are "trustees" for present purposes. Decl. of Van Der Wiele [Doc. # 35], at 2.

*Carden* distinguished *Navarro* and clarified that *Navarro*'s holding was limited to its facts.[6]   Repeatedly emphasizing that *Navarro* involved a lawsuit brought by eight trustees "in their own names," not the trust itself, the *Carden* majority stated that "*Navarro* had nothing to do with the citizenship of the 'trust.'" *Carden*, 494 U.S. at 192-93.  Justice Scalia wrote that "[*Navarro*] did not involve the question whether a party that is an artificial entity other than a corporation can be considered a 'citizen' of a State, but [did involve] the quite separate question whether parties that were undoubted 'citizens' (viz., natural persons) were the real parties to the controversy." *Id.* at 191.  The *Carden* Court focused on the *Navarro* Court's reaffirmation of "the rule, 'more than 150 years' old, which permits such trustees 'to sue in their own right, without regard to the citizenship of the trust beneficiaries.'" *Id.* (quoting *Navarro*, 446 U.S. at 465-66).[7]  The Supreme Court explained that respondent Arkoma's contention that *Navarro* should be applied to

---

[6]   The *Carden* majority did not overrule *Navarro*, but took pains to distinguish the earlier decision.

[7]   The Court disagrees with Plaintiffs' reference to this language for the proposition that "trusts are not unincorporated associations subject to the analysis of *Carden*" and that "[f]or 'more than 150 years,' the citizenship of trust beneficiaries has not affected diversity jurisdiction."  Plaintiffs' Response [Doc. # 29], at 2 (quoting *Carden*, 494 U.S. at 191).  As the full quotation from *Carden* demonstrates, the Supreme Court was not referring to the citizenship of a trust; it referred to the ability of trustees to sue in their own names.  *Carden*, 494 U.S. at 191.  The majority in *Carden* did not state that trusts are not "artificial entities" (the term *Carden* uses) or "unincorporated associations" (the term *Navarro* uses).  *See generally Carden*, 494 U.S. at 187-96.

determine whether "an artificial entity is a citizen" was "to put it mildly, less than compelling." *Id.* at 192.

Like Arkoma, Plaintiffs argue that the "rule for unincorporated associations had nothing to do with 'the distinctive common-law institution of trustees.'" Plaintiffs' Response [Doc. # 29], at 2 (quoting *Carden*, 494 U.S. at 194). A close review of *Carden* undermines Plaintiffs' position. In full, the portion of *Carden* on which Plaintiffs rely states: "From the fictional *Marshall* [which discussed corporations], the dissent must leap almost a century and a third to *Navarro* to find a 'real party to the controversy' analysis that discusses 'control.' That case, as we have said, is irrelevant, since it involved not a juridical person but the distinctive common-law institution of trustees." *Id.* at 194. While *Navarro* specifically distinguished between "unincorporated associations" and corporations, *Carden*'s analysis was broader. In *Carden*, the majority did not use the narrower term "unincorporated associations," other than to quote the dissent. 494 U.S. at 195. The majority broadly and repeatedly addressed "artificial entities." *Id.* at 187, 196, 197. The *Carden* Court discussed trusts in distinguishing *Navarro*, but never differentiated trusts from other "artificial entities" or suggested that trusts are not artificial entities. *See generally id.* at 187-96. Justice Scalia, for the majority, instead drew a distinction between suits involving individual trustees (*i.e.*, human beings) and suits involving artificial entities. *Id.* at 191-93.

The *Carden* majority also rejected the dissent's application of *Navarro*'s "real party in interest" test on the question of diversity of citizenship for a trust, an artificial entity. According to the *Carden* majority, that Court was faced with "the quite different question of how the citizenship of [a] single artificial entity is to be determined—which in turn raises the question whether it can (like a corporation) assert its own citizenship, or rather is deemed to possess the citizenship of its members, and, if so, which members." *Id.* at 188 n.1.[8] Plaintiffs similarly argue, based on *Navarro*, that because the VEBA Trust's trustees possess "the customary powers of a trustee to 'manage, hold and dispose of [trust] assets for the benefit of others,'" Plaintiffs' Brief [Doc. # 28], at 3, and because "[t]rust beneficiaries are not involved in the management, holding or disposition of trust assets," *id.* at 4, the citizenship of the VEBA Trust depends on the citizenship of its trustees. *Id.* at 2. However, Plaintiffs' approach was advocated by the dissent in *Carden*, *id.* at 200-04 (O'Connor, J., dissenting), and was squarely rejected by the majority based on the Supreme Court's precedent in *United Steelworkers of Am. v. R. H. Bouligny, Inc.*, 382 U.S. 145, 146 (1965); *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S.

[8] This conclusion is consistent with *Navarro*'s explanation that "[t]here is a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy. But the two rules serve different purposes and need not produce identical outcomes in all cases." *Navarro*, 446 U.S. at 463 n.9.

449, 456 (1900); and *Chapman v. Barney*, 129 U.S. 677, 682 (1889). *Carden*, 494 U.S. at 194-96. The majority explained that "[t]he dissent fail[ed] to cite a single case in which the citizenship of an artificial entity, the issue before us today, has been decided by application of the 'real party to the controversy' test that it describes." *Id.* at 188 n.1; *see also id.* at 193-94 (rejecting the use of "real party of the controversy approach" that "looks to 'control over the conduct of the business and the ability to initiate or control the course of litigation'" or "a 'control' test").

This Court finds persuasive the reasoning of the District Court of the District of Columbia on the issue presented at bar:

> That trustees can in some circumstances be the real party to a controversy and bring actions in their own names on the basis of their own citizenship does not logically require that a trust takes on the citizenship of its trustees in a suit by or against the trust itself. Determining which parties before the court are the real parties and determining the citizenship of a given party, *Carden* makes clear, are distinct questions.

*Yueh-Lan Wang ex rel. Wong v. New Mighty U.S. Trust*, 841 F. Supp. 2d 198, 204-05 (D.D.C. 2012) (citing *Carden*, 494 U.S. at 188 n.1, 191, 193). "In other words, *Carden* clarified that *Navarro*—in which the trustees, and not the trust, were the named parties—had established that trustees may in some circumstances be the real party in interest, but 'had nothing to with' the distinct issue of a trust's citizenship." *Id.* at 204.

The Fifth Circuit has recognized the *Carden* Court's clarification that every artificial entity, other than a corporation, takes its citizenship from all of the members comprising the entity." *Corfield v. Dallas Glen Hills L.P.*, 355 F.3d 853, 865 (5th Cir. 2003) (citing *Carden*, 494 U.S. at 195-96). When ascertaining whether the federal courts have diversity jurisdiction, the Fifth Circuit routinely applies *Carden* for the proposition that an artificial entity is deemed to have the citizenship of all of its members. *See, e.g.*, *Harvey*, 542 F.3d at 1079-80 (limited liability company) (citing *Carden*, 494 U.S. at 195-96); *Corfield*, 355 F.3d at 865 (limited partnership) (citing *Carden*, 494 U.S. at 195-96); *Atlas Global Group, L.P. v. Grupo Dataflux*, 312 F.3d 168, 170 (5th Cir. 2002) (partnership) (citing *Carden*, 494 U.S. at 195), *rev'd on other grounds by* 541 U.S. 567 (2004); *Bankston v. Burch*, 27 F.2d 164, 166 & n.2 (5th Cir. 1994) (partnership) (citing *Carden*, 494 U.S. at 195-96); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 882 (5th Cir. 1993) (insurance association) (citing *Carden*, 494 U.S. at 195-96; *Whalen v. Carter*, 954 F.2d 1087, 1094-95 (5th Cir. 1992) (citing *Carden*, 494 U.S. at 195-96). For instance, in *Harvey*, the Fifth Circuit recognized that "[t]he [Supreme] Court has refused to treat unincorporated associations as corporations for diversity purposes," and applied the Supreme Court's holding in *Carden* to limited liability companies. 542 F.3d at 1079-80. Similarly, while sitting as a district judge, Judge Edith Brown Clement concluded, in regard to the citizenship of a land trust and

relying in part on *Carden*, that "[i]t is well-settled that an unincorporated association assumes the citizenship of its individual members. Thus, the citizenship of a land trust is to be determined by looking to the citizenship of its members, including its investors or beneficiaries and not simply its trustees." *Fagan Enterprises, Inc. v. Constantin Land Trust*, No. CIV.A. 98–333, 1998 WL 195984, at *1 (E.D. La. Apr. 22, 1998).

Which "members" of a trust should be included when determining diversity of citizenship is, however, difficult question that has divided federal courts. The Fifth Circuit has not had an occasion to address the impact of *Carden* with regard to the citizenship of trusts. Plaintiffs rely heavily on a footnote in *Mullins II*, 564 F.3d at 397 n.6, in which the Fifth Circuit cited *Navarro* for the proposition that the "citizenship of a trust is that of its trustee." *Id.*; *see* Plaintiffs' Brief [Doc. # 28], at 5-6. The Fifth Circuit, in fact, had to determine the citizenship of a partnership (Defendant Sagaponack Partners, L.P.), and, to do so, was required to decide the citizenship of Defendant's general partner and 31 limited partners, which included 16 individuals, 6 corporations, 3 trusts, 4 general partnerships, a limited partnership, and a limited liability company. 564 F.3d at 397. The Court here, however, is unpersuaded that the conclusion in *Mullins*' footnote can bear heavy weight. The Fifth Circuit's subject matter jurisdiction analysis was made in passing, relegated to a footnote in a case raising numerous complex other issues,

and was made without the benefit of briefing or argument from the parties in either of two appeals. Significantly, *Carden*'s impact on *Navarro* was never raised or briefed by the parties and was not addressed by the Fifth Circuit.

The broad statements in *Carden* concerning artificial entities—without restriction other than for corporations[9]—lead this Court to conclude that the lower federal courts must consider the citizenship of beneficiaries of trusts as "members" of the trust, an artificial entity, in diversity of citizenship analyses.[10] *See, e.g.*, *Carden*, 494 U.S. at 195 ("In sum, we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members.").

The Court finds persuasive the careful analysis of the several other courts that have addressed the issue and concluded there is that no logical distinction between trusts and other artificial entities.[11] *See, e.g.*, *Emerald Investors Trust*,

---

9 As noted, *Carden* recognized the further exception for corporations' civil law analog, *sociedad en comanditas*. *See Carden*, 494 U.S. at 189-90 (distinguishing *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933)).

10 Because the VEBA Trust's trustees are not citizens of Texas and therefore do not raise an impediment to complete diversity, the Court does not reach whether under *Carden* the "members" of a trust include only the trust's beneficiaries or both the beneficiaries and its trustees. *See generally Emerald Investors*, 492 F.3d at 201-06; *Yueh-Lan Wang*, 841 F. Supp. 2d at 205-07.

11 Indeed, this conclusion is consistent with the *Carden* dissent's interpretation of the majority opinion. The dissent wrote that "the Court will, without analysis of the particular entity before it, count every member of an unincorporated association

(continued . . . )

492 F.3d at 205; *Riley*, 292 F.3d at 1337-40; *Yueh-Lan Wang*, 841 F. Supp. 2d at 203-05; *Oak Den Farm, LLC v. Travelers Indem. Co.*, No. 06-7205, 2008 WL 115179, at *5-6 (E.D. La. Jan. 9, 2008).[12] This Court also concludes it is bound by *Carden*'s holding that the real party in interest test is inapplicable to diversity jurisdiction analysis in this context. *See Carden*, 494 U.S. at 188 n.1, 191-92, 193-95.[13]

---

for purposes of diversity jurisdiction." *Carden*, 494 U.S. at 199 (O'Connor, J., dissenting).

12 Although other circuits have held that a citizenship of a trust is determined solely by the trustees, these courts have done so without analysis of *Carden* and with only citations to, but no analysis of, *Navarro*. *See Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 901 (7th Cir. 2010) (citing *Navarro*, 446 U.S. 458; *N. Trust Co. v. Bunge Corp.*, 899 F.2d 591 (7th Cir. 1990)); *Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006) (citing *Navarro*, 464 U.S. at 464); *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002) (citing *Navarro*, 446 U.S. at 464); *May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 599 (7th Cir. 2002) (citing *Navarro*, 446 U.S. at 464-66; *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 257 (7th Cir. 1998); *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998) (citing *Navarro*, 446 U.S. at 465-66).

13 Plaintiffs argue that this Court is bound by *Navarro* because it has not been expressly overruled by the Supreme Court. Plaintiffs' Brief [Doc. # 28], at 6 (quoting *Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010)) (citing *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001)); Plaintiffs' Response [Doc. # 29], at 2 (citing *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989)). However, although *Navarro* has not been "unequivocally overruled," it is not controlling in the instant case because *Carden* makes clear that *Navarro* is not directly applicable to the issue before this Court. The instant case does not involve litigation by or against individual trustees. Based on the broad use of language in *Carden*, this Court is persuaded that *Carden* is directly applicable to the instant case and therefore, cannot be ignored by this Court.

The Court recognizes that parties' access to federal courts may be limited by an approach requiring consideration of trust beneficiaries' citizenship for diversity of citizenship jurisdiction analysis and that some trusts have large numbers of beneficiaries, making it more difficult to determine beneficiaries' citizenship for litigation purposes.    Nevertheless, given the ubiquity of computerized recordkeeping, it should not be difficult in most instances to determine whether at least one beneficiary or trustee is a citizen of an opposing party's state.  Further, application of *Navarro*'s real party in interest analysis often would require courts' resolution of far more complex contested issues such as exactly who is a "trustee," the scope of the duties of the trustees, and whether the trustees are real parties in interest regarding the particular claims asserted.    The Court thus concludes that *Carden*'s requirement that all artificial entities be treated consistently furthers the admirable goal of relative simplicity and predictability for litigants.

Finally, as Justice Scalia noted, there is an "important policy" of leaving to Congress decisions about which artificial entities are "entitled to be considered a 'citizen' for diversity purposes, and which of their members' citizenship is to be consulted." *Carden*, 494 U.S. at 197.  These "are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction." *Id.*   This Court agrees; Congress is best

equipped to address these issues, just as it did with corporate citizenship for jurisdictional purposes. *See* 28 U.S.C. § 1332(c)(1) (establishing that a corporation is a citizen of the state where it is incorporated and the state where it has its principal place of business).[14] As the Fifth Circuit has recognized, Congress has made no exception to "*Carden*'s rule of citizenship for unincorporated associations" in any area of the general diversity jurisdiction statute other than for class actions. *Harvey*, 542 F.3d at 1080.

Because complete diversity of citizenship between Plaintiffs and Defendants is lacking, the Court lacks subject matter jurisdiction and must dismiss this case.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that this case is **DISMISSED without prejudice**.

SIGNED at Houston, Texas, this 31st day of **January, 2013.**

Nancy F. Atlas
United States District Judge

[14] It is noted that Congress also addressed the citizenship of estates and guardianships for the purpose of diversity jurisdiction: "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent." 28 U.S.C. § 1332(c)(2).